E-FILED
Tuesday, 01 September, 2026 11:03:18 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **FREDDIE WILLIAMS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 26-3186** |
| | ) | |
| **TRAVIS L. COOLEY, *et al.*,** | ) | |
| **Defendants.** | ) | |

## MERIT REVIEW ORDER

Plaintiff, proceeding *pro se* and currently incarcerated at Western Illinois Correctional Center ("Western"), filed a Complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights. (Doc. 1). The Court must "screen" Plaintiff's Complaint, and through such process, identify and dismiss any legally insufficient claim, or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *See Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels are insufficient, however. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

## ALLEGATIONS

Plaintiff files suit against Lieutenant Travis Cooley, Sergeant Randall Hettinger, Correctional Officers Henson and D. Flowers, Counselors Jared Pearce, Cole Logsdon, and E. Shoopman, and John Does (Correctional Officers/Internal Affairs).

On December 6, 2024, Plaintiff filed grievance #K25-12-24-5556 stating that five inmates, including inmate Cody Parsons, were threatening him and falsely stating he was gay.

On December 7, 2024, Plaintiff was involved in a physical altercation with inmate Parsons. Plaintiff was charged with "Assault to an Offender" and received fourteen days in segregation. (Doc. 1 at p. 8). While Plaintiff was in segregation, Plaintiff alleges he spoke with Defendant Pearce while he was making rounds in the restrictive housing unit. Plaintiff alleges he told Defendant Pearce that five inmates, including inmate Parsons, had threatened to "kick [his] gay ass." *Id.* at p. 13. Plaintiff alleges Defendant Pearce did not take action and failed to protect him.

During the Adjustment Committee hearing on December 20, 2024, Plaintiff requested a transfer or to be placed on "keep separate" status from inmate Parsons. *Id.* Defendant Cooley, the Adjustment Committee Chairperson, allegedly told Plaintiff a "keep separate" would be done. *Id.*

On December 23, 2024, Plaintiff informed Defendant Sergeant Hettinger that he was not getting along with his new cellmate. Defendant Hettinger allegedly refused to move Plaintiff or his cellmate and told Plaintiff: "Fuck or fight. I don't care, but I'm not moving you to segregation." *Id.* at p. 15. Plaintiff states he walked to segregation for his own safety and received a disciplinary ticket for refusing housing and disobeying a direct order.

On December 31, 2024, Plaintiff filed grievance #K25-01-25-019 stating that Defendant Pearce had ignored his concerns about the five inmates who threatened to harm him and failed to forward his prior grievance (#K25-12-24-5556) to Internal Affairs.

On January 2, 2025, Defendant Counselor Shoopman responded to grievance #K25-01-25-019 and stated that she spoke with Defendant John Doe #4, an Internal Affairs Officer, about Plaintiff's grievances. Defendant Shoopman concluded Plaintiff's grievance was moot. Plaintiff alleges two of the inmates who threatened him were moved, but three remained.

On or about July 17, 2025, Plaintiff learned from Defendant Counselor Logsdon that grievance #K25-12-24-5556 was not received for second level review.

On July 14, 2025, Plaintiff filed grievance #K25-07-25-2726 to inform staff that he was housed near inmate Parsons, even though Defendant Cooley told Plaintiff they would be kept separate. While Defendant Logsdon was making rounds in the R4 housing unit, Plaintiff alleges he personally informed Defendant Logsdon that he was concerned about his safety because inmate Parsons was housed on same wing, level, and side of the wall as Plaintiff. In response, Defendant Logsdon told Plaintiff that there was not a "keep separate" in place. *Id.* at p. 14.

On August 6, 2025, Plaintiff filed grievance #K25-08-25-3110 about being demoted from a work program. Plaintiff states he spoke with Defendant Henson, who was the Placement Officer at the time, during chow hall and informed her that he had not received a demotion, as the Adjustment Committee was satisfied with Plaintiff completing fourteen days in segregation in December 2024. Defendant Henson allegedly told Plaintiff to stop filing grievances against staff, referring to grievance #K25-01-25-019.

Defendant Henson also allegedly told Plaintiff that Defendant Flowers was not requesting him to return to work, due to a rumor that Plaintiff was gay. Defendant Henson allegedly stated: "You know how staff feel about gays and pedophiles." *Id.* at p. 17.

On August 20, 2025, Plaintiff was attacked by inmate Parsons, who had an unidentified object in his hand. Plaintiff suffered a head wound and was bleeding. Plaintiff alleges Defendant Correctional Officer John Doe #1, who was assigned to the walk in front of the R4 housing unit, saw inmate Parsons attack Plaintiff.

When Defendant Correctional Officer John Doe #2 was informed that inmate Parsons had attacked Plaintiff, Defendant John Doe #2 allegedly stated: "I don't have time for this shit, go lock up or receive[] a ticket." *Id.* Plaintiff states John Doe #2 was assigned to the R4 housing unit during the 11:00 p.m. to 7:00 a.m. shift.

Plaintiff alleges he told Defendant Correctional Officer John Doe #3 that he had been attacked by inmate Parsons and needed medical care. Defendant John Doe #3 allegedly told Plaintiff he would return after he was done with count, but Defendant John Doe #3 never returned. Plaintiff states John Doe #3 was assigned to the R4 housing unit to conduct the institutional count during the 7:00 a.m. to 3:00 p.m. shift.

In a conclusory fashion, Plaintiff also claims Defendants Correctional Officers John Does #5 and #6 denied him medical care. *Id.* at p. 16.

## ANALYSIS

**Defendant Jared Pearce**

Plaintiff alleges he was involved in physical altercations with inmate Parsons on December 7, 2024, and August 20, 2025.

Before the first altercation, Plaintiff filed grievance #K25-12-24-5556 on December 6, 2024, complaining that five inmates, including inmate Parsons, were threatening to physically harm him. Plaintiff claims Defendant Pearce failed to forward the grievance to Internal Affairs for an investigation.

On December 7, 2024, Plaintiff was involved in a physical altercation with inmate Parsons and placed in segregation. While in segregation, Plaintiff personally informed Defendant Pearce that inmate Parsons had threatened to "kick [Plaintiff's] gay ass." (Doc. 1 at p. 13). Defendant Pearce allegedly did not take action, and inmate Parsons attacked Plaintiff on August 20, 2025.

Prison officials violate the Eighth Amendment when they act with deliberate indifference to "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S 825, 837 (1994). The risk of harm to which the prisoner was subjected must be objectively serious. *Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018). "[I]t does not matter whether the risk comes from a single

source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843. A prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* A plaintiff "normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (citations omitted). Generalized, vague, or stale concerns about one's safety typically will not suffice. *Id.* at 480-81.

The Court finds that Plaintiff's allegations are sufficient to proceed on an Eighth Amendment claim against Defendant Pearce for allegedly failing to protect Plaintiff from inmate Parsons on December 7, 2024, and August 20, 2025.

**Defendant Travis Cooley**

During an Adjustment Committee hearing on December 20, 2024, Plaintiff asked Defendant Cooley for a "keep separate" from inmate Parsons. Defendant Cooley allegedly told Plaintiff a "keep separate" would be done; however, Plaintiff was later housed near inmate Parsons and attacked again on August 20, 2025. The Court finds that Plaintiff's allegations are sufficient to proceed on an Eighth Amendment claim against Defendant Cooley for allegedly failing to protect Plaintiff from being attacked by inmate Parsons on August 20, 2025.

**Defendant Randell Hettinger**

On December 23, 2024, Plaintiff told Defendant Hettinger that he was not getting along with his new cellmate, but Defendant Hettinger refused to separate them. Plaintiff refused the housing assignment and was placed in segregation. Plaintiff does not allege that he was physically

attacked by his new cellmate. The allegations regarding his new cellmate appear unrelated to his physical altercations with inmate Parsons. Therefore, Defendant Hettinger is dismissed without prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and § 1915A.

**Defendants Shoopman and John Doe #4**

On December 31, 2024, Plaintiff filed grievance #K25-01-25-019 stating that Defendant Pearce had ignored his concerns about the five inmates who threatened him. Plaintiff alleges Defendant Counselor Shoopman responded to his grievance on January 2, 2025. In her response, Defendant Shoopman stated she spoke with Defendant Internal Affairs Officer John Doe #4 about Plaintiff's grievance and concluded it was moot. Plaintiff contends the grievance was not moot because only two of the inmates had been moved. Plaintiff does not specify if inmate Parsons had been moved.

While Plaintiff is critical of how his grievance was handled, this is not enough to plead personal liability under § 1983. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). "[T]he alleged mishandling of [Plaintiff's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Id.* (citations omitted). Defendants Shoopman and John Doe #4 are dismissed without prejudice for failure to state a claim under Rule 12(b)(6) and § 1915A.

**Defendant Cole Logsdon**

On July 14, 2025, Plaintiff informed Defendant Logsdon that he was housed near inmate Parsons and was concerned about his safety. Defendant Logsdon allegedly failed to take action and told Plaintiff that there was no "keep separate" in place. The Court finds that Plaintiff's allegations are sufficient to proceed on an Eighth Amendment claim against Defendant Cooley for allegedly failing to protect Plaintiff from being attacked by inmate Parsons on August 20, 2025.

**Defendants John Does #1, 2, 3, 5, and 6**

Plaintiff alleges he suffered a head wound when inmate Parsons attacked him on August 20, 2025, but Defendants John Does #1, #2, #3, #5, and #6 did not provide him with medical care.

It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). A claim of deliberate indifference contains both an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Id*. An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes*, 546 F.3d at 522.

To satisfy the subjective component, the inmate must demonstrate that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The official must know of and disregard an excessive risk to the inmate's health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The prisoner must show that the defendant engaged in more than negligence and that the defendant's conduct approached intentional wrongdoing or criminal recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837).

Plaintiff alleges Defendant John Doe #1 witnessed the attack. When Defendant John Doe #2 learned Plaintiff had been attacked and injured, he allegedly stated: "I don't have time for this shit, go lock up or receive[] a ticket." (Doc. 1 at p. 17). When Plaintiff asked Defendant John Doe #3 for medical care, Defendant said he would return after performing a security count but never

did. Plaintiff does not include any specific allegations about Defendants John Does #5 and #6 in his Complaint.

The Court finds that Plaintiff's allegations are sufficient to proceed on an Eighth Amendment deliberate indifference claim against Defendants John Does #1, #2, and #3 for allegedly denying Plaintiff medical attention for his head wound after he was attacked by inmate Parsons on August 20, 2025. Plaintiff's allegations against Defendants John Does #5 and #6 are too sparse to establish how they were personally involved in allegedly denying him medical care. Therefore, Defendants John Does #5 and #6 are dismissed without prejudice for failure to state a claim under Rule 12(b)(6) and § 1915A.

Defendants John Does #1, #2, and #3 cannot be served. As such, the Court *sua sponte* adds Justin Maher, in his official capacity as the warden of Western, as a party to facilitate the identification of Defendants John Does #1, #2, and #3. *See Donald v. Cook Co. Sheriff's Dept.*, 95 F.3d 548, 556 (7th Cir. 1996) (concluding that a court may allow the case to proceed to discovery against a high-level official with the expectation that he will aid in identifying any Doe Defendants). Plaintiff may propound written discovery requests upon the warden aimed solely at identifying the Doe Defendants. After the Doe Defendants have been identified, the warden may move to be dismissed. Ultimately, it is Plaintiff's responsibility to identify the Doe Defendants and file a motion to substitute their real names. The failure to do so will result in the dismissal of the Doe Defendants without prejudice.

**Defendant Henson**

Plaintiff alleges he was demoted from a work program. On an unspecified date, Plaintiff questioned Defendant Placement Officer Henson about his demotion and informed her the Adjustment Committee had not imposed a demotion in December 2024. Defendant Henson

allegedly advised Plaintiff to stop filing grievances and referenced grievance #K25-01-25-019, which Plaintiff had filed against Defendant Pearce.

To establish First Amendment retaliation, Plaintiff must successfully allege that (1) his speech was constitutionally protected; (2) he suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor in the Defendant's action. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). Prisoners have a right to complain of prison conditions and may not be retaliated against for exercising that right. *Babcock v. White,* 102 F.3d 267, 276 (7th Cir. 1996). The Court finds that Plaintiff's allegations are sufficient to proceed on a First Amendment retaliation claim against Defendant Henson for allegedly demoting him from a work program for filing grievance #K25-01-25-019.

**Defendant Flowers**

Defendant Henson allegedly told Plaintiff that Defendant Flowers, the Supply Supervisor, did not want Plaintiff to return to work based on a rumor that he was gay. Plaintiff's sparse allegations against Defendant Flowers are insufficient to establish personal involvement in a constitutional violation. *See Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."). Defendant Flowers is dismissed without prejudice for failure to state a claim under Rule 12(b)(6) and § 1915A.

**IT IS THEREFORE ORDERED:**

1) According to the Court's Merit Review of Plaintiff's Complaint under 28 U.S.C. § 1915A, this case shall proceed on an Eighth Amendment failure to protect claim against Defendants Jared Pearce, Travis Cooley, and Cole Logsdon, an Eighth Amendment deliberate

indifference claim against Defendants John Does #1, #2, and #3, and a First Amendment retaliation claim against Defendant Henson. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2) The Clerk is directed to ADD John Doe #1 (Correctional Officer), John Doe #2 (Correctional Officer), and John Doe #3 (Correctional Officer) as Defendants.

3) The Court *sua sponte* adds Justin Maher, in his official capacity as the warden of Western Illinois Correctional Center, as a Defendant to facilitate the identification of Defendants John Does #1, #2, and #3. The Clerk is directed to ADD Justin Maher (Warden) as a Defendant.

4) Defendants Randell Hettinger, E. Shoopman, D. Flowers, and John Does #4, #5, and #6 are DISMISSED WITHOUT PREJUDICE for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and § 1915A. The Clerk is directed to TERMINATE Defendants Hettinger, Shoopman, Flowers, and John Does.

5) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

6) The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

7) Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

8) If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

9) This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin

until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

10) Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the deposition.

11) Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

12) Plaintiff shall be provided a copy of all pertinent medical records upon request.

13) Within 10 days of receiving from defense counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to defense counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

14) The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

ENTERED: 9/1/2026

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge